UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW PORWANCHER,

       Plaintiff,

   v.

NATIONAL ENDOWMENT FOR THE
HUMANITIES, et al,

      Defendants.

Civil Action No. 25-1180 (CJN)

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Background ...................................................................................................................... 1

    I.      Statutory Background ......................................................................................... 1

    II.     Procedural Background ....................................................................................... 3

Legal Standards ............................................................................................................... 3

Argument ......................................................................................................................... 4

    I.      Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits. .................. 4

          A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Grant Termination. ............................................................................................... 4

          B.     APA Review is Unavailable Because the Challenged Action Was Committed to Agency Discretion by Law. ................................................. 8

          C.     Plaintiff Fails to Plausibly Allege Violations of the Due Process or the Spending Clause ...................................................................................... 10

          D.     Plaintiff's Ultra Vires Claim Fails. ......................................................... 12

    II.     Plaintiff Has Not Demonstrated that He Would Face Irreparable Harm Absent Emergency Relief ............................................................................................. 13

    III.    The Balance of Equities and Public Interest Weigh Against Relief. .................... 15

    IV.    Any Injunctive Relief Should Be Stayed Pending Appeal and a Bond Should Be Required. ...................................................................................................... 18

Conclusion ..................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d,
    327 F.2d 327 (D.D.C. 2012) ............................................................................ 14
*Am. Meat Inst. v. Dep't of Agric.*,
    968 F. Supp. 2d 38 (D.D.C. 2013) .................................................................. 15
*Atherton v. D.C. Off. of Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) ........................................................................ 11
*Aviles-Wynkoop v. Neal*,
    978 F. Supp. 2d 15 (D.D.C. 2013) .................................................................. 14
*Butera v. District of Columbia*,
    235 F.3d 637 (D.C. Cir. 2001) ........................................................................ 11
*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006) .................................................................. 13, 14
*Colo. Wild Horse v. Jewell*,
    130 F. Supp. 3d 205 (D.D.C. 2015) ................................................................ 16
*Comm'n*,
    758 F.2d 669 (D.C. Cir. 1985) .............................................................. 13, 14, 15
*Cornish v. Dudas*,
    540 F. Supp. 2d 61 (D.D.C. 2008) .................................................................. 14
*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022) ......................................................................... 5
*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988) ........................................................................ 13
*Davis v. Pension Ben. Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ........................................................................ 3
*Decatur Liquors v. District of Columbia*,
    478 F.3d 360 (D.C. Cir. 2007) ........................................................................ 11
*Department of Education v. California*,
    145 S. Ct. 966 (2025) .............................................................................. 4, 5, 17
*Doe v. District of Columbia*,
    93 F.3d 861 (D.C. Cir. 1996) .......................................................................... 11
*Eagle Tr. Fund v. USPS*,
    365 F. Supp. 3d 57 (D.D.C. 2019) .................................................................. 13
*Elkins v. District of Columbia*,
    690 F.3d 554 (D.C. Cir. 2012) ........................................................................ 11
Executive Order 14222 .......................................................................................... 16
*Fincke v. United States*,
    675 F.2d 289 (1982) ....................................................................................... 6, 7
*Heckler v. Chaney*,
    470 U.S. 821 (1985) .......................................................................................... 9
*Hometown Connections v. Noem*, Civ. A.,
    No. 25-885, 2025 WL 1103253 (D. Md. Apr. 14, 2025) .............................. 7, 8

*John Doe Co. v. CFPB,*
    849 F.3d 1129 (D.C. Cir. 2017) ................................................................................ 14

*Leedom v. Kyne,*
    358 U.S. 184 (1958) ................................................................................................. 13

*Lewis v. District of Columbia,*
    161 F. Supp. 3d 15 (D.D.C. 2015) ............................................................................ 11

*Maryland v. King,*
    567 U.S. 1301 (2012) ............................................................................................... 16

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial*
    *Conference of the U.S.,*
    264 F.3d 52 (D.C. Cir. 2001) ................................................................................... 13

*MCorp,*
    *Fin., Inc.,* 502 U.S. .................................................................................................. 13

*Medina v. District of Columbia,*
    517 F. Supp. 2d 272 (D.D.C. 2007) ......................................................................... 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ..................................................................................................... 4

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel,*
    437 F.3d 1256 (D.C. Cir. 2006) ............................................................................... 13

*Nat'l Ass'n of the Deaf v. Trump,*
    486 F. Supp. 3d 45 (D.D.C. 2020) ............................................................................. 4

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................................. 16

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) ........................................................................... 12, 13

*Penhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ................................................................................................... 13

*Pippenger v. U.S. DOGE Serv.,* Civ. A.,
    No. 25-1090 (BAH), 2025 WL 1148345 (D.D.C. Apr. 17, 2025) .............................. 7

*Schroer v. Billington,*
    525 F. Supp. 2d 58 (D.D.C. 2007) ........................................................................... 12

*Sealed v. Sealed,*
    332 F.3d 51 (2d Cir. 2003) ......................................................................................... 9

*Sherley v. Sebelius,*
    644 F.3d 388 (D.C. Cir. 2011) ................................................................................... 3

*Singh v. Carter,*
    185 F. Supp. 3d 11 (D.C. Cir. 2016) .......................................................................... 4

*Solomon v. Off. of Architect of the Capitol,*
    539 F. Supp. 2d 347 (D.D.C. 2008) ......................................................................... 12

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
    205 F. Supp. 3d 4 (D.D.C. 2016) ............................................................................... 4

*Steenholdt v. FAA,*
    314 F.3d 633 (D.C. Cir. 2003) ................................................................................... 9

*Thermalon Indus., Ltd. v. United States,*
    34 Fed. Cl. 411 (1995) ........................................................................................... 6, 7

*Toms v. Off. of Architect of the Capitol*,
    650 F. Supp. 2d 11 (D.D.C. 2009) ............................................................ 11, 12
*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*,
    259 F.2d 921 (D.C. Cir. 1958) ................................................................ 14, 15
*Vt. Yankee Nuclear Power Corp. v. Natural Resources Def.,*
    *Fund*, 435 U.S. 519 (1978) .......................................................................... 9
*Webster v. Doe*,
    486 U.S. 592 (1988) .................................................................................. 9
*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ....................... 5
*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) .................................................................................. 3, 15

**Statutes**

5 U.S.C. § 701(a)(1) .................................................................................. 8
5 U.S.C. § 701(a)(2) .................................................................................. 8
5 U.S.C. § 704 .......................................................................................... 8
5 U.S.C. § 706(2)(A) ................................................................................ 4
20 U.S.C. § 951(1) .................................................................................... 1
20 U.S.C. § 956 ................................................................................... 6, 10
20 U.S.C. § 956(c) .............................................................................. passim
20 U.S.C. §§ 951-960 ............................................................................... 9
28 U.S.C. § 1491(a)(1) .......................................................................... 4, 5
Pub. L. 118-42 .......................................................................................... 6
Pub. L. 119-4 ............................................................................................ 6
U.S.C. § 956(b) ........................................................................................ 1

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................... 18

**Regulations**

2 C.F.R. § 200.340(a)(4) ..................................................................... 12, 16

**Other Authorities**

Pub. L. 89-209 .......................................................................................... 1

Defendants, by and through the undersigned counsel, respectfully file this memorandum in opposition to Plaintiff's motion for temporary restraining order (ECF No. 9, "Pl.'s Mot."). For the reasons explained herein, Plaintiff is unable to demonstrate that he is likely to succeed on the merits, that he will suffer irreparable harm absent emergency relief, or that the balance of the equities or the public interest tips in his favor. The Court should deny Plaintiff's motion.

## BACKGROUND

### I.    <u>Statutory Background</u>

National Endowment for the Humanities ("NEH") was created by statute in 1965.  *See* National Foundation on the Arts and the Humanities Act, Pub. L. 89-209, 20 U.S.C. § 951(1) (Sept. 29, 1965).  The statute provides that "[t]he Endowment shall be headed by a chairperson, who shall be appointed by the President, by and with the advice and consent of the Senate."  20 U.S.C. § 956(b).  "The Chairperson, with the advice of the National Council on the Humanities . . . , is authorized to enter into arrangements, including contracts, grants, loans, and other forms of assistance, to" carry out various specified purposes, including to "initiate and support research and programs to strengthen the research and teaching potential of the United States in the humanities by making arrangements with individuals or groups to support such activities . . ." and to "initiate and support programs and research which have substantial scholarly and cultural significance and that reach, or reflect the diversity and richness of our American cultural heritage, including the culture of, a minority, inner city, rural, or tribal community."  *Id*. § 956(c).

NEH did not terminate all existing grants, and, since the challenged action occurred, has continued to award new grants.  Decl. of Acting Chairman Michael McDonald ¶¶ 21-22 (attached). Indeed, many NEH grant recipients continue to receive NEH funding for awards that were ongoing in early April 2025.  *Id*. ¶ 14.  Moreover, since mid-April of this year, the NEH Chairman has instituted three new grant programs and has continued at least fifteen existing grant programs that

are either currently accepting applications or have upcoming deadlines in the next several months. *Id.* ¶ 19.  Through nine such programs, NEH awarded $9.55 million in grants in April alone for 68 humanities projects across the country.  *Id.* ¶ 21; *see* Press Release, NEH Announces $9.55 Million for 68 Humanities Projects, May 8, 2025, https://www.neh.gov/news/neh-announces-955-million-68-humanities-projects ("May 8, 2025, Release") (last visited June 8, 2025); *see also* NEH Grant Awards and Offers, May 2025.[1]

Those projects include, among other things, support for production of a documentary about a 14-year-old Jewish girl whose diary was found in the rubble of Auschwitz in 1945; a discussion program for veterans, focusing on the legacies and public memorialization of the Civil War and Vietnam War; the digitization of archival materials held by Rochester Institute of Technology documenting Deaf history and culture and records relating to the National Institute for the Deaf; research regarding the early drawings and engravings of William Blake; an online database of 3D models of the Great Marble Map of Rome; preparation of a book examining how T.S. Eliot's childhood experiences are reflected in his poetry; a two-year project to develop online courses in Micronesian studies; a two-year project to create educational resources on African American art history with a focus on the South; a one-year initiative to increase access to humanities internships for underrepresented and underserved students; and the implementation of a traveling exhibition examining African American photojournalism from the 1940s through the 1980s.  McDonald Decl. ¶ 21; May 8, 2025, Release; May 2025 Grant Awards List.  The agency intends to award additional grants following anticipated meetings with NEH's advisory committee, the National Council on the Humanities, in July 2025 and November 2025.  McDonald Decl. ¶ 22.

---

[1]    https://www.neh.gov/sites/default/files/Spring%202025%20grants%20state%20by%20state%20list%20FINAL.pdf (May 2025 Grant Awards List) (last visited June 8, 2025).

## II.    <u>Procedural Background.</u>

Plaintiff initiated this lawsuit on April 16, 2025. *See* Compl. (ECF No. 1). On June 2, 2025, Plaintiff filed an amended complaint. *See* Am. Compl. (ECF No. 8). Plaintiff filed a motion for preliminary injunction on June 2, 2025. (ECF No. 9, "Plaintiff's Motion"). Plaintiff alleges that on April 3, 2025, he received notice that the federal grant for Grant Application No. FZ29839124 was terminated in accordance with the termination clause in the Grant Agreement. *See id*. Ex. M: National Endowment for the Humanities Notice of Grant Termination (ECF No. 9-15) at 2. Plaintiff's Motion seeks an expedited order "(1) prohibiting Defendants, their officers, employees, and agents from reallocating funds obligated to Plaintiff to other recipients, (2) enjoining Defendants, their officers, employees, and agents from enforcing and giving effect to the Termination Notice sent to Plaintiff [,] and (3) requiring Defendants, their officers, employees, and agents to reinstate Plaintiff's award." Pl's Mot. (ECF No. 9) at 1.

## LEGAL STANDARDS

On a motion for a preliminary injunction, a district court balances four factors: "(1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the nonmovant, and (4) public interest." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). The Supreme Court has further held that at least the second factor—irreparable harm—must be likely and "not just a possibility." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

Historically, the D.C. Circuit evaluated the four factors on a "sliding scale" and balanced them against each other, such that a strong showing on one factor could overcome weaker showings on other factors. *Davis*, 571 F.3d at 1291-92. Since the Supreme Court's decision in *Winter*, however, the D.C. Circuit implied—without deciding—that each of the factors was now an "independent, free-standing requirement." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir.

2011) (Kavanaugh, J., concurring); *see also Singh v. Carter*, 185 F. Supp. 3d 11, 16-17 (D.C. Cir. 2016) (sliding scale approach is "highly questionable" and a plaintiff "bears the burden of persuasion on all four preliminary injunction factors"). At the very least, the first two factors carry the most weight, and where a plaintiff can show "neither harm nor success, no relief is warranted." *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 51 (D.D.C. 2020) (citing *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016).

## ARGUMENT

Plaintiff here has not met any of the four factors, and this Court therefore should deny the Motion for Preliminary Injunction. He is unlikely to succeed on the merits for multiple reasons, including, among others, because this action is beyond the Court's jurisdiction and the matter was committed to agency discretion by law. Moreover, he has failed to show irreparable harm that is more than merely speculative. And the public interest and the balance of equities tip against him.

## I.    Plaintiff Fails to Demonstrate a Likelihood of Success on the Merits.

The Administrative Procedure Act ("APA") permits a reviewing court to set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Grant Termination.

As a threshold matter, this Court lacks subject matter jurisdiction over the termination of Grant Application No. FZ29839124 because the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over such claims based on contracts with the United States. *See* 28 U.S.C. § 1491(a)(1). As the Supreme Court recently explained in *Department of Education v.*

*California*, 145 S. Ct. 966 (2025) (*per curiam*), when staying a district court's injunction in another challenge to programmatic grant terminations, "the Government is likely to succeed in showing the District Court lack[s] jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id*. at 968 (quoting 28 U.S.C. § 1491(a)(1)). This Circuit recently came to the same conclusion in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), in which it granted a stay of district court preliminary injunctions pending appeal in cases challenging, among other things, the termination of grants by the United States Agency for Global Media ("USAGM").[2]

For purposes of the Tucker Act, whether a claim is "founded upon" a contract depends on "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin*., 38 F.4th 1099, 1106 (D.C. Cir. 2022). "[A]n action against the United States which is at its essence a contract claim lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Id*.

---

[2]    On May 28, 2025, the D.C. Circuit granted en banc reconsideration and vacated the court's May 3, 2025, decision on this issue.  The May 28 order stated that "the jurisdictional argument advanced by the government . . . raises an important issue, as indicated by its recurrence in a number of recent cases," and "[a]t this initial stage, substantially for the reasons explained [in the dissent to the panel decision], the government has not made the requisite strong showing of a likelihood of success on the merits of its appeals in these cases."  Nos. 25-5144, 25-5145, 25-5150, 25-5151, May 28, 2025 Order.  The referenced dissent, among other things, distinguished the arguments raised by the networks in *Widakuswara* from the plaintiffs' arguments in *Department of Education v. California* on the basis that the plaintiffs in the latter case "were not entities created by statute and designated by Congress to receive specified sums" and that their "only claim was to sums awarded to them in previously awarded discretionary grants." *Widakuswara*, 2025 WL 1288817, at *13 (Pillard, J. dissenting).  The order otherwise left the stay granted by the original D.C. Circuit panel in place.  Here, the recipient at issue was not created by statute or designated by Congress.

The grant agreement at issue in this lawsuit is a contract. The statute that created NEH authorizes its "Chairperson, with the advice of the National Council on the Humanities . . . to enter into arrangements, including contracts, grants, loans, and other forms of assistance, to," among other things, "initiate and support research and programs to strengthen the research and teaching potential of the United States in the humanities . . . ." 20 U.S.C. § 956(c). Likewise, the governing appropriation statute allocates specific funding amounts for grants. Consolidated Appropriations Act, 2024, Pub. L. 118-42 (Mar. 9, 2024); March 15, 2025, Continuing Resolution, Pub. L. 119-4; *see also* National Foundation on the Arts and the Humanities Act of 1965 § 7(c) (authorizing NEH Chairman to, among other things, "award fellowships and grants"). None of these statutes requires NEH to award grants or provide funds to specific grant holders, including the Plaintiff. *See generally* 20 U.S.C. § 956; Consolidated Appropriations Act, 2024; March 15, 2025, Continuing Resolution. Plaintiff's claim to the grant funds thus derives not from these statutory authorities, but from the grant agreement itself — which NEH had discretion to award.

As alleged in in the Amended Complaint, NEH promised appropriated funds to various recipients. Am. Compl. (ECF No. 8) ¶ 34. In return, the grantees promised to use the funds in accordance with NEH's requirements. *See* General Terms and Conditions for Awards to Organizations, https://www.neh.gov/grants/manage/organizations (last visited June 6, 2025), and Grants Management Policy and Guidance for Awards to Individuals, https://www.neh.gov/grants/manage/individuals (last visited June 8, 2025) (describing applicable terms and conditions, including "[r]ecipient responsibilities"). The mutual intent to contract, along with other terms outlined in the grant agreement, constitute government contracts for Tucker Act purposes. *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 414 (1995) ("The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and

consideration passing between the parties.") (citing *Fincke v. United States*, 675 F.2d 289, 295 (1982)).

Plaintiff's contention that the grant agreement is not a contract because it lacks consideration is misplaced. Pl's Mot. *See* (ECF No. 9-1) at 10, 20-25. To the contrary, the General Terms and Conditions for Awards to Individuals demonstrates the passage of consideration between the parties. *See* General Terms and Conditions of Awards to Individuals (for awards with start dates January 1, 2025, or later), https://www.neh.gov/general-terms-and-conditions-awards-individuals (last visited June 8, 2025). Plaintiff would receive NEH funding for research and anticipated publication, and NEH would receive from Plaintiff acknowledgement of NEH support in Plaintiff's book; a royalty fee; and the irrevocable right to produce, publish, or otherwise use Plaintiff's NEH supported work for federal purposes. *See id.* Because of the significant consideration outlined in the grant agreement "the grant agreement cannot be characterized as a governmental gift or mere gratuity." *Thermalon Indus.*, 34 Fed. Cl. at 415 (citation omitted).

Plaintiff cannot get around this jurisdictional bar to his claims. *See, e.g., Pippenger v. U.S. DOGE Serv.*, Civ. A. No. 25-1090 (BAH), 2025 WL 1148345, at *5 (D.D.C. Apr. 17, 2025) (concluding court was "deprive[d]" of "authority to consider claims sounding in contract or to enjoin further termination of contracts, even if they are styled as APA claims"); *Sols. in Hometown Connections v. Noem*, Civ. A. No. 25-885, 2025 WL 1103253, at *11 (D. Md. Apr. 14, 2025) (denying motion for emergency relief challenging termination of grants in light of Supreme Court's order in *Department of Education* and concluding that plaintiffs' APA claims were "in essence contract claims"); Order, *Am. Ass'n of Colls. For Teacher Ed. v. McMahon*, Civ. A. No. 25-1281 (4th Cir. Apr. 10, 2025), Dkt. No. 30 (staying district court's preliminary injunction involving education-related grants in light of Supreme Court's *Department of Education* decision);

Order, *U.S. Conf. of Catholic Bishops v. State*, Civ. A. No. 25-5066 (D.C. Cir. Mar. 28, 2015), Dkt. No. 2108313 (denying motion for injunction pending appeal from district court's order, which denied motion for preliminary injunction solely on the basis that the Tucker Act deprived it of jurisdiction to enjoin the government from pausing or terminating funding agreements).

Further, this Court lacks jurisdiction over all of Plaintiff's claims relating to grant terminations, whether styled as claims under the APA or as violations of the due process clause, the spending clause, ultra vires claims, or something else. However styled, these claims ultimately challenge the termination of Plaintiff's grant agreement and should be heard if at all in the Court of Federal Claims. *See, e.g., Sols. in Hometown Connections*, 2025 WL 1103253, at *10 (rejecting "argument that the source of [plaintiffs'] APA claims in this case is statutory, regulatory and constitutional in nature" and "conclud[ing] that the source of the rights with regards to [plaintiffs'] APA claims here is their respective Grant agreements with DHS").

Finally, APA review is not available to the extent that other "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and the APA only provides a cause of action where "there is no other adequate remedy in a court," 5 U.S.C. § 704. Here the Tucker Act precludes Plaintiff's APA and constitutional claims which seek to challenge his grant termination, and the Tucker Act provides the remedial scheme to challenge the termination of Plaintiff's grant agreement.

### B.    APA Review is Unavailable Because the Challenged Action Was Committed to Agency Discretion by Law.

APA review also is unavailable here because the action Plaintiff challenges is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Plaintiff does not cite authority that limits the agency's inherent discretion to make independent decisions about the amount of appropriations to expend during a given time period, whether to award or maintain particular grants, and the number of grants to award or maintain over a particular time frame.

Courts have explained that agency action is "committed to agency discretion by law" when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," rendering "meaningful judicial review . . . impossible." *Steenholdt v. FAA*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). This is true "even where Congress has not affirmatively precluded review." *Heckler*, 470 U.S. at 830. Hallmarks of a decision committed to agency discretion include a statute that puts the onus on the agency, not the courts, to apply a standard, and general criteria that make it difficult for courts to meaningfully second-guess an agency determination. *See id.*; *see also Webster v. Doe*, 486 U.S. 592, 600 (1988).

The Act establishing NEH, the National Foundation on the Arts and Humanities Act of 1965, 20 U.S.C. §§ 951-960, is such a statute. For one thing, it authorizes the NEH Chairperson to "enter into arrangements, including contracts, grants, loans, and other forms of assistance" aimed at various humanities-related objectives—but does not require NEH to enter into particular grants, maintain specific levels of staffing, create or retain the programs or departments that Plaintiff identifies in his complaint, or fund particular grants or a certain number of grants within a given time frame. 20 U.S.C. § 956(c); *see Vt. Yankee Nuclear Power Corp. v. Natural Resources Def. Fund*, 435 U.S. 519, 545 (1978) (explaining that a court may not "dictat[e] to the agency the methods, procedures, and time dimension" to make an agency decision); *see also Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir. 2003) (distinguishing between a statute that "channels official discretion by mandating a defined administrative outcome" and a statute that "merely authorizes particular actions"). Moreover, the statute's authorization to fund grants encompasses broadly drawn topics and guidelines that would not provide a meaningful rubric for court review. For example, it authorizes the chairperson to administer grants pertaining to: "the pursuit of a national policy for

the promotion of progress and scholarship in the humanities"; "research and teaching potential of the United States in the humanities"; "training and workshops in the humanities"; "programs and research" with "substantial scholarly and cultural significance"; and programs and research that "reach, or reflect the diversity and richness of our American cultural heritage," including "a minority, inner city, rural, or tribal community." 20 U.S.C. § 956(c). The statute thus gives the agency wide latitude to enter into grant agreements that serve any of several expansive statutory goals like supporting "scholarship in the humanities," "research and teaching potential of the United States in the humanities," and "interchange of information in the humanities." *Id*. Nor does the relevant appropriations legislation limit the agency's discretion by compelling it to spend all of the funds appropriated to it by a date certain. The most recent appropriations legislation states simply that the $207 million appropriated by Congress shall "remain available until expended." *See* Consolidated Appropriations Act, 2024.

## C. Plaintiff Fails to Plausibly Allege Violations of the Due Process or the Spending Clause.

Even if Plaintiff's claims could withstand the threshold jurisdictional hurdles—which they cannot—Plaintiff has not plausibly alleged violations of the due process clause or the spending clause.

### 1. Plaintiff is Unlikely to Succeed on His Due Process Claim.

The Fifth Amendment provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. Plaintiff alleges that he "has a property interest in his award because NEH entered into a grant agreement that created a "mutually explicit understanding[]" that NEH would provide the grant unless it was terminated by Porwancher himself or by NEH for his "noncompliance with terms and conditions." Pl's Mot. (ECF 9-1) at 41-42. As an initial matter, Plaintiff's due process claim is essentially a breach of contract claim. On

top of that, Plaintiff neither identifies whether his procedural or substantive due process rights allegedly were violated. *See id.*

In any event, any procedural due process claim fails. A "procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). "At a minimum, a procedural due process claim 'requires the plaintiff to identify the process that is due.'" *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (quoting *Doe v. District of Columbia*, 93 F.3d 861, 870 (D.C. Cir. 1996)); *see also Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) ("To state a procedural due process claim, a complaint must suggest 'what sort of process is due.'"). Here Plaintiff fails to identify any process he was due that the Defendants failed to provide. As Plaintiff cannot identify a process he allegedly was denied, any due process claim is really a contract claim at best, or nothing more than a bare-bones allegation that cannot meet the threshold requirement of identifying the process that is due, and thus dismissal is warranted. *Lewis v. District of Columbia*, 161 F. Supp. 3d 15, 30–31 (D.D.C. 2015) (dismissing due process claims "[b]ecause [the complaint] is devoid of allegations as to the actual process purportedly denied . . . the [complaint] does not raise [plaintiff's] procedural due process claim 'above the speculative level' to the realm of plausibility").

To the extent that Plaintiff attempts to raise a substantive due process claim, this claim likewise is fatally flawed. "[S]ubstantive due process constrains only egregious government misconduct." *Decatur Liquors v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007). Thus, "a substantive due process violation will only occur where the government's conduct is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Toms v. Off. of Architect of the Capitol*, 650 F. Supp. 2d 11, 25–27 (D.D.C. 2009) (quoting *Butera v.*

*District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001)). Indeed, prior NEH Chairpersons have eliminated grant program opportunities. McDonald Decl. ¶ 15. Prior NEH Chairpersons have eliminated grant programs initiated by prior Administrations to better align with the current Administration's priorities. *Id*. ¶ 18. Thus, NEH's actions cannot be deemed outrageous or shocking. Moreover, allegations of perceived procedural deficiencies do not make out a substantive due process claim. *See Toms*, 650 F. Supp. 2d at 25–27 (finding that "plaintiff's perceived procedural deficiencies" did not constitute a substantive due process violation); *Solomon v. Off. of Architect of the Capitol*, 539 F. Supp. 2d 347, 350-51 (D.D.C. 2008) (dismissing substantive due process claim, as procedural issue did not meet "conscience-shocking" test). In sum, Plaintiff's due process claim, no matter how construed, fails.

2.    Plaintiff is Unlikely to Succeed on His Spending Clause Claim.

Plaintiff alleges the decision to terminate Plaintiff's grant agreement violated the spending clause by surprising Plaintiff with post acceptance or retroactive conditions. Pl's Mot. (ECF No. 9-1) at 44. But Defendants did not impose post acceptance or retroactive conditions on Plaintiff's grant agreement. Defendants terminated Plaintiff's grant agreement according to the authority of the Chairperson and the grant terms and conditions under which NEH made the award. *See* 2 C.F.R. § 200.340(a)(4); 20 U.S.C. § 956(c). And NEH's "no year" funding means that NEH is not required to disburse its funds within a given fiscal year. *See* McDonald Decl. ¶ 23. Accordingly, Plaintiff fails to identify any violation of the spending clause.

**D.    Plaintiff's Ultra Vires Claim Fails.**

Plaintiff attempts to repackage his contract claim as an ultra vires claim, but this claim likewise fails. Ultra vires review is "a doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C.

Cir. 2009). A plaintiff may seek ultra vires review only when "(i) the statutory preclusion of review is implied rather than express, (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts 'in excess of its delegated powers and contrary to a specific prohibition in the' statute that is 'clear and mandatory.'" *Id.* (quoting *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *MCorp Fin., Inc.*, 502 U.S. at 44; *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the U.S.,* 264 F.3d 52, 63-64 (D.C. Cir. 2001); *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263-64 (D.C. Cir. 2006))*.*

Here, as discussed above, the Tucker Act provides remedies for the Plaintiff to challenge the termination of his grant agreement. This precludes this Court from providing supplemental remedies for the termination, including through ultra vires review. And for the reasons discussed above, Plaintiff's ultra vires claim also fails on the third prong of the test, because Defendants have not violated any "clear and mandatory" statutory command. And allegations of constitutional error do not establish ultra vires action. *See Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 68 n.6 (D.D.C. 2019). Neither do claims that "simply involve a dispute over statutory interpretation." *Dart v. United States*, 848 F.2d 217, 231 (D.C. Cir. 1988). Rather, an officer may be said to act ultra vires "only when he acts 'without any authority whatever.'" *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984).

## II.    Plaintiff Has Not Demonstrated that He Would Face Irreparable Harm Absent Emergency Relief.

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the moving party must demonstrate an injury that is "'both certain and great'" and "of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* (emphasis in original)

(quoting *Wis. Gas Co. v. Fed. Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Second, the injury must "be beyond remediation," meaning the possibility of corrective relief "at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* at 297–98 (quoting *Wis. Gas*, 758 F.2d at 674). Plaintiff has the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)). Here, Plaintiff fails to meet this burden.

First, a loss of funding, standing alone, constitutes the very sort of economic harm that is not considered irreparable for purposes of obtaining preliminary relief. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (per curiam) ("[I]t is 'well settled that economic loss does not, in and of itself, constitute irreparable harm[.]" (citation omitted)); *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327 F.2d 327, 335 (D.D.C. 2012) ("The first hurdle Plaintiffs face is that the harms they identify are economic in nature and therefore not generally irreparable."). Plaintiff's claim is essentially that he will not receive $60,000 in grant funding to allow him to take an academic year off from teaching to work on his anticipated publication. *See* Pl's Mot. (ECF No. 9-1) at 47. (alleging that "absent relief prior to the fall semester . . . Porwancher will be unable to take leave this academic year to work on his book"). But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a" preliminary injunction, such as determining an alternative schedule to conduct research and write Plaintiff's anticipated publication, or the need to schedule classes for the upcoming semester, "are not enough" to show irreparable harm. *Va. Petroleum Jobbers*

*Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). Plaintiff may be inconvenienced due to the fact that he will likely teach during the upcoming academic year, but this inconvenience does not establish an irreparable harm.

Second, the other harms that Plaintiff lists are speculative at best and are comprised of "bare allegations." *Wis. Gas Co.*, 758 F.2 at 674. This includes Plaintiff's allegations regarding the "prestige of the grant itself and the accelerated publication of his book, including increased mobility on the job market, speaking engagements, possibly book prizes, and a merit-based raise." Pl's Mot. (ECF No. 9-1) at 47. Instead, plaintiffs must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Further, the alleged harm must "directly result from the action which the movant seeks to enjoin." *Wis. Gas Co.*, 758 F.2d at 674. When a harm is "based on independent market variables such as how [a company's] customers and/or retail consumers might react," such harm does not flow directly from the challenged action. *Am. Meat Inst. v. Dep't of Agric.*, 968 F. Supp. 2d 38, 81 (D.D.C. 2013).

In sum, Plaintiff cannot show that absent emergency relief he will suffer irreparable harm.

## III.  <u>The Balance of Equities and Public Interest Weigh Against Relief.</u>

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the Government is the opposing party.

*See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). These factors weigh in the Defendants favor.

First, the injunction Plaintiff seeks would disrupt NEH's efforts to implement the President's directives while complying with the agency's statutory obligations. *See* McDonald Decl. ¶¶ 11-14. In particular, Executive Order 14222 required, among other things, that agency heads review, in consultation with DOGE, "all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify [them] to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of [the] Administration." Exec. Order. No. 14222, 90 F.R. 11095, 11-96-96 (Pres. 2025). That process was implemented at NEH, and granting Plaintiff's requested preliminary injunctions would disrupt NEH's execution of it. *See* McDonald Decl. ¶ 13-14, 17-18, 21-22. Contrary to Plaintiff's contention, NEH's action was lawful, and "[a]ny time [the government] is enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Plaintiff is not requesting that the Court merely require Defendants to abide by the law; instead, Plaintiff is effectively asking the Court to step in and direct NEH which grants it may legally terminate and which grants it may legally fund—an exercise that would interfere with the agency's discretion to enter into grant agreements that serve any of a number of broad statutory goals and to terminate a grant award if it "no longer effectuates . . . agency priorities." *See* 20 U.S.C. § 956(c); 2 C.F.R. § 200.340(a)(4); *see also* McDonald Decl. ¶¶ 11-13, 15, 16, 18, 21-22.

Further, the injunction that Plaintiff seeks will harm the public fisc. Where the Government is legally entitled to make decisions about the disbursement or allocation of federal funds but is nonetheless ordered to release the funds, such funds may not be retrievable afterwards. *See*

*Department of Education*, 145 S. Ct. at 968-69 (noting "the Government's representation that it is unlikely to recover the grant funds once they are disbursed" as among the reasons supporting a stay of a temporary restraining order enjoining the Government from terminating various education-related grants).  Plaintiff, in contrast, "can recover any wrongfully withheld funds through suit in an appropriate forum" if he prevails on his claims.  *Id*. at 969.

As discussed above, Plaintiff will not suffer irreparable harm from the denial of his preliminary injunction, because the potential harms that Plaintiffs has identified are fundamentally economic, and thus not irreparable, and the remaining harms are remote or speculative at best. And in light of NEH's continuing efforts to administer grants and foster programming in  the humanities, Plaintiff's general pronouncements—that "reinstating Porwancher's award will benefit the public because the award will fund humanities scholarship that is "written for the broad public" and that will reach "the broadest possible range of readers," and the challenged actions "deprive[] the public of its access to scholarship and new ideas"—are speculative and lack merit.  Pl's Mot. (ECF No. 9-1) at 51 (internal citation omitted). In an April 24, 2025, press release, NEH reiterated its mission to "bring the wisdom of the humanities to all Americans" through "research projects that advance humanistic learning, preservation projects that ensure access to significant humanities resources, education projects that strengthen teaching in the humanities, and public programing that conveys the best of the humanities to all Americans."  Press Release, An Update on NEH Funding Priorities and the Agency's Recent Implementation of Trump Administration Executive Orders, Apr. 24, 2025,    https://www.neh.gov/news/update-neh-funding-priorities-and-agencys-recent-implementation-trump-administration-executive; *see also* McDonald Decl. ¶¶ 7, 17-25 (discussing NEH's "mission" and attesting that NEH "continues to exist and to undertake its Congressionally mandated statutory functions of funding projects that strengthen humanities research, education,

teaching and scholarship in a wide variety of humanities disciplines"). Consistent with these goals, as discussed, NEH announced in May that it had awarded millions of dollars in grants to support research, scholarship, or other projects in subjects including the Holocaust, the history the Deaf, William Blake, ancient Rome, German Expressionist art, and African American photojournalism. *See* McDonald Decl. ¶ 21.

Accordingly, the balance of the equities and the public interest militate against the requested preliminary injunction.

## IV.    Any Injunctive Relief Should Be Stayed Pending Appeal and a Bond Should Be Required.

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or at a minimum, administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized.

The Defendants also respectfully request that any injunctive relief be accompanied by a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may not be recouped once distributed.

\*    \*    \*

**CONCLUSION**

For these reasons, Plaintiff's motion for preliminary injunction should be denied.

Dated: June 10, 2025                    Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney


                                        By:     _____/s/Kimberly A. Stratton_____
                                            KIMBERLY A. STRATTON
                                            P.A. Bar #327725
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 417-4216
                                            kimberly.stratton@usdoj.gov

                                        *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW PORWANCHER,<br><br>                    Plaintiff,<br><br>          v.<br><br>NATIONAL ENDOWMENT FOR THE<br>HUMANITIES, et al.,<br><br>                    Defendants. | Civil Action No. 25-1180 (CJN) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendants' response in opposition to Plaintiff's motion for

a preliminary injunction, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is denied


SO ORDERED:


_____                    _____
Date                                 Carl J. Nichols
                                     United States District Judge