UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW PORWANCHER,

    *Plaintiff*

v.

NATIONAL ENDOWMENT FOR THE HUMANITIES, et. al,

    *Defendants*.

Civil Action No. 1: 25-cv-1180 (CJN)

**MEMORANDUM OPINION**

    Plaintiff Andrew Porwancher is a professor of history at Arizona State University. In August 2024 he received a grant from the National Endowment for the Humanities that would have funded twelve months of full-time research for his upcoming book. In April 2025, however, NEH terminated Porwancher's grant (along with many others). Porwancher claims that this termination was unlawful for various reasons and, as most relevant here, seeks a preliminary injunction preventing the government from treating his grant as terminated. For the reasons discussed below, the Court grants in part Porwancher's Motion for Preliminary Injunction, ECF 9.

    **I.**    **Background**

    The National Endowment for the Humanities was created by statute in 1965. *See* National Foundation on the Arts and the Humanities Act, Pub. L. 89-209, 20 U.S.C. § 951(1) (Sept. 29, 1965). That statute authorizes the NEH's "Chairperson, with the advice of the National Council on the Humanities . . . to enter into arrangements, including contracts, grants, loans, and other forms of assistance," to carry out various specified purposes, including to "initiate and support research and programs to strengthen the research and teaching potential of the United States in the humanities by making arrangements with individuals or groups to support such activities," as well as to "initiate

1

and support programs and research which have substantial scholarly and cultural significance and that reach, or reflect the diversity and richness of our American cultural heritage, including the culture of, a minority, inner city, rural, or tribal community." *Id.* § 956(c). The grants are prestigious and difficult to win; in 2023, of 283 Public Scholar applicants, only 25 received a grant. ECF 8 at 10.

The NEH is a federal executive agency—and is governed by a set of regulations known as Uniform Administrative Requirements. 2 C.F.R. §§ 200.0 *et seq.* The version of those regulations relevant here was issued on November 12, 2020. Under that version, absent consent, the NEH can terminate an award if: (1) the recipient "fails to comply with the terms and conditions of [the] Federal award," (2) "pursuant to termination provisions included in the Federal Award," or (3) "to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities." ECF 1 at 4; 2 C.F.R. § 200.340(a) (2020).

The regulations also contain a specific termination procedure. The NEH must "determine that noncompliance cannot be remedied by imposing additional conditions" on the award. 2 C.F.R. § 200.339(c) (2020). The NEH also "must provide the [recipient] an opportunity to object and provide information and documentation challenging the suspension or termination action, in accordance with written processes and procedures published by [NEH]." *Id* § 200.342. And the NEH "must provide . . . a notice of termination" that "must" furnish multiple pieces of information, *id* § 300.341, including that: the "termination decision will be reported to [an] OMB [database]"; the termination decision "will be available in the OMB [database] for a period of five years"; other agencies that consider future grant applications from the recipient "must consider [the termination decision] in judging whether the [recipient] is qualified to receive" another federal award; the recipient of the terminated award "may comment on any information the OMB [database] contains about the [recipient] for future consideration by Federal awarding agencies"; and "Federal awarding

2

agencies will consider [the recipient's] comments when determining whether the [recipient] is qualified for a future Federal award." *Id.*

As noted above, Porwancher is a professor of history at Arizona State University. ECF 9-1 at 5. In August 2024, the NEH selected him for a Public Scholar Grant, which would have provided him $60,000 to fund twelve months of full-time research on his upcoming book regarding the trial of a nineteenth century Jewish convert. *Id.* at 6. Because the grant required that Porwancher "forgo other major activities, including teaching" during that twelve-month period, he received permission from ASU to take leave from his teaching and service duties during the upcoming academic year. *Id.*

In early April 2025, the NEH terminated nearly all of the grants it had issued in 2024. ECF 9-1 at 8. As for Porwancher in particular, on April 3, 2025, he received a termination notice, purportedly from acting NEH director Michael McDonald, from a nongovernment Microsoft email account. ECF 9-14 at 2. The email included a general statement that Porwancher's book project no longer effectuated the agency's priorities or the new administration's agenda. ECF 9-15. On April 4, Porwancher asked the NEH about how he might appeal that decision; the agency responded that no such process existed. ECF 9-1 at 9.

Porwancher initiated this suit less than two weeks later. ECF 1. Following the filing of an amended complaint, he asserts various claims regarding the termination of his grant, including that it violated the Administrative Procedure Act because it was arbitrary and capricious, contrary to law, violated his due process rights, violated the Spending Clause of Article I of the Constitution, and was *ultra vires*. ECF 8 at 23–26. That same day, Porwancher also moved for a preliminary injunction. He requests that the Court prohibit reallocation of his grant funds, enjoin the government from enforcing the termination notice, require the government to reinstate the grant, and prohibit the government from terminating the grant in the future unless done in a manner compliant with all applicable laws and regulations. ECF 8 at 27.

3

## II.     Legal Standard

To obtain a preliminary injunction, of course, "the moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The first two factors carry the most weight, and where a plaintiff can show "neither harm nor success, no relief is warranted."  *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 51 (D.D.C. 2020).  When the movant seeks an injunction against the government, the final two factors are analyzed as one.  *See, e.g., Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016).

## III.     Analysis

### A.     Likelihood of Success on the Merits

#### 1.     Jurisdiction

With respect to likelihood of success on the merits, the government's primary argument is that Porwancher cannot demonstrate he is likely to succeed on any of his claims because the Court lacks jurisdiction.  In particular, the government argues, the Court lacks jurisdiction "because the Tucker Act vests the Court of Federal Claims with exclusive jurisdiction over such claims based on contracts with the United States."  ECF 15 at 4 (*citing* 28 U.S.C. § 1491(a)(1)).

To be sure, Porwancher's claims do, at a glance, look like contract claims.  But the Court of Appeals has "explicitly rejected the broad notion 'that any case requiring some reference to or incorporation of a contract is necessarily *on* the contract and therefore directly within the Tucker Act.'"  *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022).  Instead, whether the Court has jurisdiction (or, more precisely at this stage, whether Porwancher is likely to establish that

4

the Court has jurisdiction) is a question that must be analyzed "in light of the . . . claims the [plaintiff] actually brings." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013).

Under the Court of Appeals' "longstanding test," the question is whether the claims Porwancher asserts are "at [their] essence… contract claim[s]." *Crowley*, 38 F.4th at 1106. And *that* question hinges on both "the source of the rights upon which the plaintiff bases [his] claims" and "the type of relief sought (or appropriate)." *Harris Cnty., Texas v. Kennedy*, WL 1707665 (D.D.C. June 17, 2025); *see also American Center For International Labor Solidarity v. Lori Chavez-Deremer*, 2025 WL 1795090, (D.D.C. June 30, 2025).

As to the source of the rights at issue, where a dispute is "entirely contained within the terms of… [the] contract," that dispute is essentially contractual. *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). Where the dispute turns on more than just contractual terms, though, those parts of the dispute that reach beyond the contract may be resolvable by a federal district court. *See, e.g., Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 276 & n.4 (D.D.C. 2021). At least one of Porwancher's claims seems to be non-contractual in this sense. In Count II of his Amended Complaint, Porwancher alleges that the NEH failed to follow its own procedural regulations in how it terminated his grant—including (among other reasons) by failing to provide him an appropriate explanation for the termination and by failing to provide him the ability to appeal it. *See* Am. Compl. (alleging that the termination was contrary to law under § 706(2)(A) of the APA because it violated the procedures contained in the regulations); *see also* 2 C.F.R. §§ 200.340(a), 200.339(c), 200.342, and 300.341. None of those procedural requirements is contained within the four corners of Porwancher's grant; rather, they apply regardless of the grant's language.

That type of claim strikes the Court as different in kind from substantive claims regarding the termination of a grant, which seem more bound to a grant's terms and whether or not a particular termination is lawful in light of those terms. In this case, for example, such a claim would likely

5

require an analysis of the grant itself, the permissible grounds on which the government could (and could not) terminate it, the government priorities reflected in the grant, and whether Porwancher's expected work is consistent with those priorities. That would be similar to the sort of claim at issue in *Ingersoll-Rand*; the question there "could [have been] phrased as whether the contract forbids termination under [specific] conditions," and that was enough for the dispute to be "entirely contained" within the contract's terms. 780 F.2d at 78. In contrast, Porwancher's claim in Count II—that the NEH violated the procedures to which it is bound by its own regulations—does not turn at all on the terms of the grant or the other issues noted above.[1]

But that doesn't end the matter; the second part of the inquiry looks to "the type of relief sought (or appropriate)." *Harris Cnty.*, 2025 WL 1707665, at *4. As a starting point, the "fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts,* 487 U.S. 879, 910 (1988). Instead, the "crux" of this question "boils down to whether the plaintiff effectively seeks to attain monetary damages in the suit." *Crowley*, 38 F.4th at 1107. Porwancher disavows any intention to seek monetary damages in the traditional sense, and the government doesn't really contest that point. Indeed, it seems unlikely that any court (whether this one or the Court of Federal Claims) could award him a damages judgment without the various conditions included in his grant. *See Nat'l Ctr. for Mfg. Sciences (NCMS) v. U.S.*, 114 F.3d 196, 201–02 (Fed. Cir. 1997).

Even so, the remedies Porwancher seeks fall on a spectrum. On the one hand, he seeks an

---

[1] To be sure, in *Dep't of Educ. v. California,* 145 S. Ct. 966, 969 (2025), the Supreme Court held that a district court likely lacked jurisdiction (and therefore improperly ordered preliminary relief) over certain APA claims in the context of a government grant. But the Court "had no occasion to consider jurisdiction over a contrary-to-law claim, because the district court did not reach it when granting the TRO." *Vera Institute of Justice, et al., Plaintiffs, v. U.S. Department of Justice, et al.*, No. 25-CV-1643 (APM), 2025 WL 1865160, at *12 (D.D.C. July 7, 2025) (citing *California v. Dep't of Educ.,* 769 F. Supp. 3d 72, 75 (D. Mass. 2025)).

injunction that would require reinstatement of his grant, which is quite close to the Court requiring the NEH to make a payment to him. ECF 8 at 27. On the other hand, he asks the Court to "set aside" the termination, 5 U.S.C. § 706(2)(A), on the ground that the government failed to follow its own procedures. ECF 8 at 27. To be sure, even that relief might result in the payment of Porwancher's grant. But not necessarily; after all, an order vacating the termination on that basis—together with an order requiring the government not to commit those procedural violations again—would leave the government free to reconsider the termination so long as it does so in a procedurally appropriate manner. In this sense, at least, what Porwancher really seeks is "prospective, nonmonetary relief to clarify future obligations." *Chavez-Deremer*, 2025 WL 1795090 at 18* (*quoting Me. Cmty. Health v. United States*, 590 U.S. 296, 327 (2020).²

In sum, then, the Court concludes that Porwancher is likely to succeed in establishing that the Court has jurisdiction over at least one of his claims (that the NEH violated its own procedural regulations for terminating his grant) and for at least some of the remedies he seeks (vacatur and an order requiring the NEH to comply with those procedural regulations in the future).³

---

² But is that essentially the same as the equitable contract remedy of specific performance? The Court thinks not, as that remedy "is available only to protect contract rights" and cannot be ordered "unless there has been a breach of contract." 71 Am. Jur. 2d Specific Performance § 1 (2025); Restatement (Second) of Contracts § 357 cmt. a (Am. L. Inst. 1981). Here, again, Porwancher does not claim that the government has breached its grant with him, and none of his claims turn on whether the government in fact has breached. Whereas specific performance demands behavior in keeping with contractual terms, Porwancher demands compliance with a regulatory regime. Moreover, as the Court of Appeals has stated, the "mere fact that an injunction would require the same government restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available and the remedial powers otherwise appropriate." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).

³ The government also argues that the Court lacks jurisdiction over Porwancher's APA claims because the challenged action was committed to agency discretion by law. But as Porwancher notes, that statute only commits the initial awarding of grants to NEH's discretion. When it comes to the process for termination, in contrast, the NEH has cabined its own discretion through various regulations discussed above. Those regulations provide meaningful standards for a court to employ." *Pol'y & Rsch., LLC v. HHS*, 313 F.Supp.3d 62, 76 (D.D.C. 2018).

### 2. Merits

As for the merits, Porwancher has demonstrated he is likely to succeed on his claim that, in terminating his grant, the NEH failed to comply with the process expressly required by the applicable regulations. Those regulations required that the NEH provide Porwancher with a notice stating "that . . . [t]he termination decision will be reported to the OMB–designated integrity and performance system . . . [and that] the information will be available . . . for a period of five years[.]" 2 C.F.R. § 200.341(b)(1), (2) (2020). The termination letter provided no such information. The notice was supposed to indicate "that noncompliance cannot be remedied by imposing additional conditions" on the award. 2 C.F.R. § 200.339(c) (2020). It didn't. And the NEH was supposed to provide Porwancher with a right to appeal. 2 C.F.R. § 200.342. It told him there was no such process. ECF 9-1 at 9.

In fact, the NEH's communication to Porwancher candidly admitted that these procedural requirements weren't met, stating: "The termination of your grant represents an urgent priority for the administration, and due to exceptional circumstances, adherence to the traditional notification process is not possible." ECF 9-15. This frank admission, together with the essentially undisputed facts, show that Porwancher has a high likelihood of success on his claim that the NEH failed to follow its own regulations. So too does the lack of a hearing or similar process. The NEH was required to provide "an opportunity to object and provide information and documentation challenging the . . . termination[.]" 2 C.F.R. § 200.342 (2020). The NEH never gave Porwancher that opportunity. And when he expressly asked about the possibility of an internal appeal, the agency informed him that it was "unable to offer [him] a means of dispute resolution." ECF 9-17.

### B.  Irreparable Injury

Turning to irreparable harm, Porwancher argues that, in the absence of a preliminary injunction, he would be unable to take leave this academic year to work on his book, ECF 9-1 at 1–2;

8

would lose the prestige of the NEH grant and the various career benefits that would flow from it (including "accelerated publication of his book . . . increased mobility on the job market, speaking engagements, possibly book prizes, and a merit-based raise."), *id.* at 2; would be forced either to teach classes in during fall semester 2025 on short notice or to use up both of his available "course releases" (essentially, passes that let him opt out of teaching a certain class), *id.*; and could suffer harm to his chances of getting a prestigious Fulbright Grant for various reasons, *id*.

The government argues that these harms are either insubstantial or speculative. And the Court agrees in part. For example, the career benefits that might flow from the prestige of receiving this NEH grant seem potentially speculative or merely delayed. After all, Porwancher might get a Fulbright even without the grant (or he might not get a Fulbright even with it). And he doesn't really articulate why the delayed prestige of receiving an NEH grant at the end of this case (if he is successful) would mean he would lose certain opportunities only available to him now.

But Porwancher has established more than that. Absent a preliminary injunction, he will either have to teach two history classes rather than write his book, or clear the history courses from his schedule by using his two "course releases"—exemptions from semesterly teaching duties that are, apparently, limited and coveted resources for ASU professors. ECF 9-1 at 2. Although it's a close call, the Court concludes that these harms—which are not rebutted by the government, and which are not speculative—are just enough to warrant injunctive relief. The lack of a grant will set Porwancher back in terms of time and prestige that he cannot get back. And these losses, so far as the Court can tell, cannot be redressed by an award of monetary damages against the government.

C.    **Substantial Injury to Other Parties and The Public Interest**

The final two factors (which merge when the government is a party) also favor Porwancher. "It is well established that the Government cannot suffer harm from an injunction that merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020) (quotation omitted).

9

Likewise, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* The Court is not moved by the government's argument that "the injunction Plaintiff seeks would disrupt the NEH's efforts to implement the President's directives while complying with the agency's statutory obligations." ECF 15 at 16. The Court's preliminary injunction is narrow; it prevents the government from treating Porwancher's grant as terminated because the government failed to follow its own procedural regulations. The injunction does not prevent the government from taking further action in conformity with those regulations.

## IV.    Conclusion

For the foregoing reasons, the Plaintiff's Motion for a Preliminary Injunction, ECF 9, is GRANTED IN PART. A separate order will accompany this opinion.

DATE: July 25, 2025

CARL J. NICHOLS
United States District Judge